UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------------X

JEFFERSON AGUDELO,                                    Case No. 12 CIV 0960 (HB)
On behalf of himself, FLSA Collective Plaintiffs
And the Class,

                                    Plaintiff,        MEMORANDUM OF LAW IN
                                                      OPPOSITION TO MOTION FOR
                                                      CONDITIONAL CERTIFICATION
                                                      AND IN SUPPORT OF MOTION
                           -against-                  FOR SUMMARY JUDGMENT

E & D LLC d/b/a The Prime Grill, NY, JA
RESTAURANT MANAGEMENT, LLC d/b/a Solo,
BROADWAY 21 LLC d/b/a Prime Ko Japanese
Steakhouse and JOSEPH ALLAHAM.

                                    Defendant.

-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to Plaintiff's Motion for

Conditional Certification and in support of Defendants' Motion for Summary Judgment

Dismissing the Amended Complaint against each of the named Defendants.   This claim

continues to be a meritless attempt to shake down the defendants with frivolous litigation.

Since commencement there has not been a single opt-in added to the claim.  Now plaintiff's

attorneys seek to solicit employees in the hopes they'll jump on the band wagon. They hope to

multiply defendants' discovery burden and engage in a fishing expedition. Defendants

respectfully submit that they should not be burdened with such litigation in a case where the

payroll records conclusively belie key allegations of plaintiff's claims and his representative

status.  Claims not disposed of by payroll records are unsupported by any underlying assertions

in the Amended Complaint.   The claims so clearly lack merit, as to both Agudelo and the class

that conditional certification and notice to other employees is unwarranted and an unfair burden on defendants.

**STATEMENT OF FACTS**

Defendants JA Restaurant, E & D, LLC and Allaham settled a class action (Exhibit B; *Manfredi v, E & D LLC, etal, 1:09-cv-07040-HPB, ECF Document# 38)*, which released them from liability through May 19, 2010 (Admitted at para. 33 of the Amended Complaint). Defendant Broadway 21 LLC opened Prime Ko restaurant in or about March of 2010, as the *Manfredi* settlement was being finalized.  Plaintiff never worked for Broadway 21 LLC. He was separately employed and separately paid by JA Restaurant whenhe worked at Solo and for E & D, LLC when he worked at The Prime Grill.  As demonstrated herein, plaintiff's Declaration in Support of his motion for conditional certification contains blatantly false statements.  His attorneys were warned that the case had no merit from the outset and they continued in spite of the fact that their allegations fly in the face of the payroll records.  Most of these records were provided to them in February 2012, prior to service of the summons and complaint.  Instead of acknowledging any lack of merit, plaintiff now seeks mislead the court to expand the frivolous litigation.

**THE PLEADINGS**

The Amended Complaint alleges the following violations of the FLSA against each defendant (paragraph of Amended Complaint referenced):

> (a)  failing to pay statutory rate for hours worked in excess of 40 (para 48);
>
> (b)  failing to pay minimum wage (para 50);
>
> (c)  failed to provide notice to employees of tip credit (para 51);
>
> (d)  retained portion of tips and shared them with non-tipped employees (id.):

5.      The Amended Complaint also alleges the following violations of the New York Labor Law ("NYLL") against each defendant:

(a)      failing to pay overtime for excess of 40 hours (para. 60);

(b)      failing to pay minimum wage (para. 62);

(c)      failed to provide notice to employees of tip credit (para. 62);

(d)      retained portion of tips and shared them with non-tipped employees (id.)

(e)      Failure to pay "shift spread" pay (para. 63);

Defendants answered the amended complaint, denying all claims and affirmatively asserting, *inter alia*, that the claim of a failure to give notice of a tip credit is estopped as to any employee who participated in the *Manfredi* settlement. Actual notice was given by mangers and written notice was provided in February 2011, however, the claim itself is ludicrous in light of the settlement, whereby knowledge of why money was received must be imputed to each employee that received it.

### THERE IS NO BASIS FOR COLLECTIVE OR CLASS ACTION

Plaintiff repeatedly alleges that his claims are typical of the class, however, he never worked over hours. He alleges he never received shift spread pay, however, the payroll records clearly show that and others he did. Others in the putative class received overtime at time and a half of the minimum wage because they occasionally worked over 40 hours. Agudelo has never worked for defendant Broadway 21, LLC. He is not representative of any putative collective plaintiff or class member of tipped employees (servers, bussers and runners) at that restaurant. He claims to have worked at Prime Ko for a few days in August 2010 helping to train employees, however, there is no record of it and Prime Ko opened in March 2010. Agudelo does not have any knowledge of the facts or any good faith basis for any of the allegations regarding

Broadway 21 LLC d/b/a Prime Ko.  His claims against Broadway 21 LLC d/b/a Prime Ko have no basis in fact and are speculative, unsupported conclusions.

There is no factual nexus that binds the employees of Broadway 21 LLC with plaintiff Agudelo.   There is similarly no "factual nexus", relative to a wages and hours claim, that binds the employees who work for defendants E & D LLC or JA Restaurant Management LLC to the employees who work for defendant Broadway 21 LLC.   Agudelo never worked overtime and is not at all representative of employees of JA Restaurant and E & D LLC who may have worked overtime.  There have never been a maitre d at Prime Ko; only managers who have never participated in any tip pool at Prime Ko.

Prime Ko opened in May 2010, at approximately the same time as the *Manfredi* was settled, on a class basis, with the employees of The Prime Grill and Solo restaurants.  Guided by the employment/labor firm of Jackson Lewis, defendant Broadway 21 LLC d/b/a Prime Ko made none of the mistakes previously made by its codefendants at Solo and The Prime Grill.

The Declarations of the managers Ines Kincaid (The Prime Grill), Puiu Vali "Valentino" (Solo) and Danny Reina (Prime Ko) demonstrate that there was no sharing of tips with the putative class members at any of the restaurants.   As a consequence there is no "minimum wage" violation which, as admitted in the plaintiff's Initial Disclosure, would only arise if there was a loss of tip credit resulting from managers participating in the tip pool.  This was the basis of liability in *Manfredi* and the matter has been settled and resolved.

Previously the payroll company ADP had used an incorrect calculation at The Prime Grill and Solo prior to May 2010.  The period prior to May 20, 2010 is already part of the *Manfredi* settlement.  The ADP payroll formula had used the tip-credited wage rate in calculating "time and a half".  Eventually, defendants Solo and The Prime Grill switched to Paychex, a different

payroll company which corrected the problem.   The incorrect tip credit formula used by ADP was never applied at Prime Ko since there was no overtime among tipped employees until much later when the restaurant began catering Sabbath meals on some Friday nights.  By that time, Broadway 21 LLC had also switched from ADP to Paychex.

Significantly, Prime Ko has never served lunch.  This means there are no double shifts for tipped employees.   From the opening of Prime Ko by defendant Broadway 21, LLC, the tipped employees of Broadway 21 LLC have rarely worked overtime.  Unlike the other two defendants' restaurants, at Prime Ko there is one server and one busser whom are each designated as "closer" each evening.  The "closers" are not scheduled to start work until 6:30 p.m. so they do not incur shift spreads.  Again the only overtime occurs when a server or busser works at a Friday night catered Sabbath dinner in the restaurant.

Overtime has only occurred during a special catered event, in addition to the regular work schedule.  Specifically, this occurs only when a Sabbath dinner is catered on a Friday night when the restaurant is normally closed.  At such an event there is no cooking only service of pre-cooked catered food.  Exhibit C is an excerpt from Broadway 21 LLC (Prime Ko) payroll, which shows year to date ("YTD") overtime payments at the correct rate.

There are rarely overtime or shift spread issues for the putative class at Prime Ko.  At all three restaurants for each defendant's payroll, Paychex designates shift spread pay as "2 Overtime" (*see* Exhibit C).  At all three restaurants for each defendant's payroll, Paychex designates hours worked over 40 per week as "4 Overtime" (*see* Exhibit C).   For example, the year-to date summary ("YTD") for Broadway 21, LLC payroll for "servers" shows servers worked a total of 2708.34 *regular* hours from January 1, 2012 to June 8, 2012 for a total of $16,227.44.  They were paid (not actually worked) a total of 4.23 hours *shift spread* pay, paid at

$7.50 per hour  ($.25 more than the required minimum wage).   They worked a mere 1.08 hours overtime (*i.e.*, over 40 hours per week) for a total of $11.67.   These hours over 40 per week were paid at time and a half.

By contrast, at The Prime Grill and Solo, employees often worked the lunch and evening shifts back to back.  As a consequence overtime and shift spreads would occur.   At all three restaurants, employees were paid their overtime.   Even if the action is not dismissed in its entirety, employees of defendant Broadway 21, LLC do not belong in a class with employees of the other defendants.  Plaintiff never worked for Broadway 21 LLC and knows nothing of its business.  Conditional class certification or certification of a collective suit should not include Broadway 21, LLC.  The YTD payroll records for JA Restaurant and E & D, LLC are annexed hereto as Exhibits D and E.   They demonstrate that overtime was properly paid.

Concerning a proposed class that would include both the Prime Grill and Solo, since the payroll records conclusively establish that there were no overtime or shift spread violations, the only claim left is a minimum wage violation based solely on an alleged loss of the tip credit.  The tip sheets submitted herewith dispose of those allegations.  If plaintiff, however, seeks to create a question of fact by making unsupported allegations of participation by managers in the tip pool at the Prime Grill, it must be specific and would be confined to the few months that he worked there.  He should have already named any such person in the Amended Complaint.  If he were to make such an allegation concerning Solo, although again unsupported and belied by the tip sheets, it would be confined to the period of time he worked at Solo (after the *Manfredi* release date of May 19, 2010). Lack of merit aside, any such allegation as to one restaurant would not justify a class including both defendants E & D, LLC (The Prime Grill) and JA Restaurant (Solo).  If plaintiff were to name a particular person listed in the tip pool on the tip sheets and

allege that that person was a maître or a manager, such a claim would be specific to that restaurant and would relate to a specific period of time. It is clear from the payroll and tip sheets that the general practice of maître d's participating in tip pools had ceased after the *Manfredi* release date. Any allegation to the contrary cannot by nature be expanded to include all three or even two restaurants. There are no managers or maître d' names on the tip sheets.

Plaintiff seeks to use a promotional website named "Prime Hospitality Group" as a basis for joining the three restaurants as a single employer. The website and its promotions are market-based not employment or management based. The website targets a limited kosher dining customer base in New York City and offers interchangeable gift certificates. The three restaurants are separately shown on the website. "Prime Hospitality Group" is not a corporation, a limited liability company or an assumed name; it is clearly not an employer or manager and it is relatively new and unrelated to the issues in this case.

<u>**THERE ARE NO WAGES AND HOURS VIOLATIONS**</u>

At all three restaurants for each defendant's payroll, Paychex designates shift spread pay as "2 Overtime" (*see* Exhibits C, D, E). At all three restaurants for each defendant's payroll, Paychex designates hours worked over 40 per week as "4 Overtime" (*see* Exhibit C). For example, the year-to date summary ("YTD") for Broadway 21, LLC payroll for "servers" shows servers worked a total of 2708.34 *regular* hours from January 1, 2012 to June 8, 2012 for a total of $16,227.44. They were paid (not actually worked) a total of 4.23 hours *shift spread* pay for a total of $31.73 ($31.73 / 4.23 = $7.50 per hour). They worked a mere 1.08 hours overtime (*i.e.*, over 40 hours per week) for a total of $11.67 ($11.67 / 1.08 = $10.81). The hours over 40 per week were paid at a rate of $10.81 per hour, which is approximately 150% of the minimum wage of $7.25. Shift spread was paid at $.25 more than the minimum wage requirement. At Solo, restaurant in 2010, while *Mnafredi* was still being litigated, none of the putative class worked

overtime; they only worked occasional shift spreads. Accordingly, there is no "4 Overtime" on the year to date summary for JA Restaurant Management (Exhibit E).

Annexed hereto as Exhibit F are the weekly tip sheets for The Prime Grill from the period of time after to May 19, 2010 (*Manfredi* release date) and the final 4 weeks of plaintiff's employment at The Prime Grill. The weekly tip sheets show that, as of the May 19, 2010 end of release date, absolutely no tips were shared with any maître D' or manager. All weekly tip sheets are available and have been produced to the plaintiff.

Annexed hereto as Exhibit G are the weekly tip sheets for Solo restaurant for the period of time prior to May 19, 2010 (the undisputed end of release date for the *Manfredi* settlement), the first month thereafter and the final weeks of plaintiff's employment at Solo. The weekly tip sheets show that, as of the May 19, 2010 end-of-release date, absolutely no tips were shared with any maître d' or manager.

Exhibit I are plaintiff's payroll records at The Prime Grill and Solo which show that he worked and was paid a shift spread, as required. The shift spread was routinely paid at $7.50, which is $.25 more than the amount required by law ($7.25). Paychex designates these hours that are paid but not worked as "2 Overtime". Where overtime is paid for less than 40 hours per week it is obviously for a shift spread and is designated "2 Overtime". The designation "4 Overtime" would be used for over 40 hours and is calculated at 150% of the minimum wage (*e.g.* Exhibit D). Plaintiff Agudelo never worked even 40 hours much less overtime. Exhibit G also includes his payroll records from Solo restaurant which show that he was paid shift spread pay at the excessive rate of $7.50 (designated "2 Overtime").

**<u>Plaintiff and all Non-exempt Employees Were Paid Overtime at The Proper Rate</u>**

In their motion for "conditional collective certification," plaintiff and his attorneys are playing fast and loose with the facts. They submit a year end paystub as evidence that overtime was miscalculated. It records only 4 hours overtime for the entire year (YTD). Plaintiff was provided copies all of the payroll record and has had them well before their motion was filed. Nevertheless they seek to mislead the court. Examination of the payroll records shows that Agudelo <u>never</u> worked a 40 hour week at either Solo or The Prime Grill. The 4 hours indicated on the pay stub submitted by Agudelo are shift spread pay. The rate designated as "2 Overtime" is for shift spread pay.

Paychex designates FLSA overtime (over 40 hours) as "4 Overtime". The rate of "4 Overtime" is paid at $10.81 per hour. That rate does not appear on any of Agudelo's payroll records with either restaurant because, as he admits in his Declaration, he has never worked over 40 hours per week. The rate of "2 Overtime" for shift pay is $7.50 per hour, although the New York Labor Law and Department of Labor Wage Order, effective January 2011, only requires the payment of an extra hour at straight time ($7.25) for shift spread pay. Agudelo and others have received shift pay at $.25 more per hour than required by law. Overtime for over 40 hours is paid at the rate of time and a half the minimum wage. In the week ending August 8, 2011, Agudelo was paid for 40 hours. He worked 38 hours at The Prime Grill and received shift spread pay for 2 hours (not actually worked). The 4 total hours indicated on the pay stub submitted by Agudelo are shift spread hours and are designated as "2 Overtime". Despite the knowledge that he never worked 40 hours, he swears falsely to the court in his Declaration (paras. 4-10) that he worked 40 hours a week; that he worked overtime; that he was not paid at the legal rate, and that he not paid shift spread pay.

Plaintiff knowingly misrepresents facts in his Amended Complaint and Declaration when he states that he was not paid overtime, not paid at the proper rate and not paid shift spread pay. He knows and, by now his attorneys know that Agudelo never worked over 40 hours and rarely worked near 40 hours. Even though there is no legend explaining " that the Paychex designation of "2 overtime" is shift spread pay, logic dictates that it could not have been overtime for over 40 hours. Despite this fact, they continue to prosecute a frivolous action and they now seek to build a class action upon this house of cards.

### Plaintiff Received Notice Of The Tip Credit

The Agudelo Declaration, at para. 11, is false regarding notice of tip credit. He received a notice as indicated by his signature on the Notice annexed as Exhibit H. Regarding notice of tip credit, all employees had actual and written notice of the tip credit since they (1) had it explained by their managers years ago; (2) received class notices and settlement money on account of the tip credit and tip pool claim in the *Manfredi* case, and (3) each received specific written notice (Exhibit H) on or about February 8, 2011, in compliance with the New York Labor Law, Department of Labor wage order for the hospitality industry, effective January 2011.

Compliance was achieved under the guidance of Jackson Lewis, which firm was co-counsel in the *Manfredi* case. Defendants have paid their dues for their past wages & hours mistakes. Like many in the industry, changes in the law regarding tip-sharing with maitre d's came as a surprise, with a possible price tag arguably going back six years under state law. Defendants E & D LLC, JA Restaurant and Allaham have already paid, learned and adjusted their practices. The law has served its purpose and then some. Defendants should not now be subjected to this Johnny-come-lately lawsuit.

**POINT I**
**STANDARD FOR SUMMARY JUDGMENT AND BURDEN OF PROOF**

The standard for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure is set forth in Anderson v. Liberty Lobby, 477 U.S. 242 (1985), as follows:

> When a properly supported motion for summary judgment is made, the adverse
> party "must set forth specific facts showing that there is a genuine issue for trial."
> And, as we noted above, Rule 56(c) provides that the trial judge shall then grant
> summary judgment if there is no genuine issue as to any material fact and if the
> moving party is entitled to judgment as a matter of law. There is no requirement
> that the trial judge make findings of fact. The inquiry performed is the threshold
> inquiry of determining whether there is the need for a trial — whether, in other
> words, there are any genuine factual issues that properly can be resolved only by a
> finder of fact because they may reasonably be resolved in favor of either party.

Anderson v. Liberty Lobby, 477 U.S. at 249.

Although the court should view any inferences that may be drawn in a light most

favorable to the non-moving party, Adickes v. D.H. Kress & Co., 398 U.S. 144 (1970), the

payroll and time records, accompanied by an affidavit explaining any deductions, sheds all the

light that is needed to determine this case.   These records show the absence of a genuine issue of

material fact for trial and shift the burden to the plaintiff.  S*ee*  Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986).  Plaintiffs must go beyond the pleadings and present affirmative evidence to

show that genuine issues of material fact exist.  Anderson v. Liberty Lobby, Inc., 477U.S. at 257.

Plaintiffs' must assert and corroborate some facts which credibly undermine the payroll,

time and earnings records in order to proceed to trial on an alleged failure to pay overtime or

minimum wage.

> By its very terms, this standard provides that the mere existence of *some* alleged
> factual dispute between the parties will not defeat an otherwise properly
> supported motion for summary judgment; the requirement is that there be no
> *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, *supra,* 477 U.S at 247-248.

Materiality is determined by the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, *supra,* 477 U.S at 248. A few anomalies, discrepancies or clerical errors in the payroll records must be material not merely de minimus mathematical or computational errors to shift the burden to the employer. *See* Etienne v. Inter-County Security Corp., 5 WH Cases2d 859 (11th Cir.), *vacating and substituting in part* 173 F.3d 1372 (11th Cir. 1999).

Uncorroborated statements or hearsay should not be deemed sufficient to overcome the presumption that the payroll records are correct. "If plaintiff's evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, 477 U.S. at 249, *citing* Dombrowski v. Eastland, 387 U.S. 82 (1967*)*(*per curiam*).

In a wages and hours case, the burden of proof remains with the plaintiffs to establish a prima facie violation, especially where payroll records have been kept by the employer. *See* Anderson v. Mt. Clemens, 382 U.S. 680 (1946); Bailey v. County of Georgetown, 94 F.3d 152, 157 (4th Cir. 1996); *see also* Rosales v. Lore, 149 Fed. Appx. 245 (2005); Lee v. Tennessee Valley Authority, (E.D. Tenn. February 9, 2007). Plaintiff must produce some admission from a defendant or some documentary evidence to corroborate the assertion that the payroll and time records do not reflect the hours worked to defeat a summary judgment motion. *See* Norton v. Groupware International, 2007 U.S. Dist. LEXIS 294 (M.D. Fla. January 4, 2007); Gale v. Levi Strauss & Co., 1999 WL 438470, 5 WH Cases 2d 513 (N.D. Ga. April 29, 1999); Bates v. Old Time Coffee Co., 2000 WL 41223 (N.D.Cal January 13, 2000).

Even if the burden of establishing a prima facie case has been met, the payroll records in the case at bar would suffice to rebut any inference of a wages and hour violation. The plaintiffs

in the case at bar cannot raised any inference in the face of the payroll and time records, nor will any suggestion of a violation survive the explanations for deductions of hours that are authorized by the applicable wages and hours law and regulation.

As to discovery, all payroll and time records, except 2010, for the named plaintiff, were disclosed with the Initial Disclosures or prior, early in the action. The 2010 are included in support of this motion. These records are dispositive of the wage and hours claims sought to be dismissed on this motion. Where a party cannot overcome the wage and hours information contained payroll and time records, summary judgment should be granted  *See* O'Brien v. Town of Agawam (IV), 48 F. Supp. 2d (D. Mass. 2007).

**POINT II**
**NO "EMPLOYER" SHARED IN THE TIP POOL**

In Ayres v. 127 restaurant Corp., the Second Circuit restated the tip pooling rule under the FLSA and New York Labor Law, as follows:

> While tip-pooling is not per se illegal, *see* Harnette v. Wade-Mark Eleven, Inc.*,* 156 A.D.2d 559, 549 NYS2d 69, 70 (2d Dep't 1989)*.* N.Y. Labor Law § 196-d prohibits any "employer or his agent" from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee." An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

Ayres , s*upra,* 12 F. Supp. 2d 305 (S.D.N.Y. 1998), *aff'd* 201 F.3d 430 (2dCir. 1999).

In determining who is an employer, Generally, courts have examined factors such as the control of hiring and firing of employees, control of the manner in which work is performed, and the fixing of employee wages in determining who is the "employer". *See* Herman v. RSR Security Services, 172 F,2d 132 (2d Cir. 1999); Wirtz v. Pure Ice Co.*,* 322 F.2d 259 (8th Cir. 1963); Fruco Const. Co. v. McClelland, 192 F.2d 241 (8th Cir. 1951); Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005).

The Court in *Ayers* found that at some point in time the Maitre D*'* assumed the following duties:  *"*(1) gained "full authority" to suspend or terminate employees, which he formerly could not do without first consulting [management]; (2) supervised the wait staff and made hiring decisions; (3) assumed greater responsibility for the restaurant's budget, including analyzing payroll and food costs; and (4) received a salary of $2,000 per week, regardless of the number of hours he worked.

In Dole v. Continental Cuisine, Inc., 751 F. Supp. 799 (E.D. Ark. 1990), the Court found that the Maitre D' was not an "employer" within the meaning of the FLSA because he did not hire and fire employees, control the methods of operation, set hourly wages, or control the payroll."  In that case these responsibilities were performed by the manager of operations.  The court further held that a Maitre D' is "the type of employee who customarily receives tips," and was, therefore, permitted to participate in the tip pool arrangement and that the restaurant did not violate §§ 206(b) & 215(a)(2) of the Fair Labor Standards Act. Dole v. Continental Cuisine, Inc., 751 F. Supp. 799 (E.D. Ark. 1990).

In the case at bar, no manger or maître d' participated in the tip pool af6ter the *Manfrredi* case settlement. The mixed question of fact and law to determine whether a particular person who had participated in a tip pool did so unlawfully is not even at issue.  The burden is on plaintiff to produce a name of a person he believes unlawfully participated in the tip pool, where and when. The Amended Complaint is void of any name and is merely conclusory and speculative.  Without assertions of supporting facts by plaintiff, all defendantscan do is show who was in the tip pool.  The names on the tip sheets include only are Servers,  Runners and Bussers.

**POINT III**
**THERE ARE NO QUESTIONS OF FACT FOR TRIAL**

The only basis for the claim that plaintiff or anyone else was not paid "minimum wage", as admitted by plaintiff in his Initial Disclosure damage calculation, the alleged loss of tip credit due to managers or maître d's participation in the tip pool.  As demonstrated herein this never occurred after the *Manfredi* release date of May 19, 2010 (if not earlier).  Accordingly, the minimum wage claim is disposed of by review of the weekly tip sheets which show no tip-pooling with any maître d' or manager.

Although, Plaintiff never worked over 40 hours a week, the Paychex payroll excerpts showing "4 Overtime" paid at time and a half the un-credited minimum wage of $7.25 at 10.81 disposes of that claim.   The payment of "2 Overtime" at $7.50 per hour for shift spread pay is evident on the Paychex payroll records and disposes of the shift spread claim.

The claim of lack of notice is disposed of by Exhibit H.  This notice was signed and acknowledged by plaintiff, as well as the other service employees as part of the NYLL compliance measures in early 2011.  Moreover, in case they have forgotten the actual notice received from their managers (prior to any law requiring written notice), every employee who participated as class members in the *Manfredi* settlement, had clearly received notice that they are, and had been, participating in a tip pool.  They are now estopped from asserting otherwise in this case.  Both written notice, actual notice and estoppel disposes of the notice claims.

There are no questions of fact regarding the issue addressed *supra*.  Plaintiff's other boiler plate assertions are unsupported and speculative and undeserving of discovery proceedings.  For example, Plaintiff asserts that unspecified putative class members were not paid "call in pay" as required by NYLL.  These are conclusory and unsupported allegations.  There is no event requiring call in pay asserted.  Call-in pay, *i.e,* minimum of 4 hours pay if an

employee were to have been sent home due to slow business, would appear as regular wages on the payroll. Without supporting facts (date, time, circumstances ), the allegation is spurious.

The remainder of the boilerplate allegations in the Amended Complaint are conclusory and unsupported by any assertion of fact. For example, defendants should not be required by the conclusory allegation to the contrary to prove that the restaurant employee meals were nutritious.

## CONCLUSION

Based on the foregoing, defendants respectfully request that the complaint be dismissed against each of them and that plaintiff and his attorneys be sanctioned jointly and severally with an award of attorney's fees to the defendant.  In the alternative, defendants respectfully request that conditional certification of any class action or collective suit including defendant Broadway 21, LLC (Prime Ko restaurant) be denied and that the Amended Complaint be dismissed against Broadway 21, LLC.

Respectfully Submitted,

Law Office of Thomas Rubertone, Jr.

*/s/ Thomas Rubertone, Jr.*
Thomas Rubertone, Jr.  (TR2193)
244 Waverly Road
Scarsdale, New York 10583
(646) 209-0301