UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
-----------------------------------------------------------------X
JEFFERSON AGUDELO,                                    Case No. 12 CIV 0960 (HB)
On behalf of himself, FLSA Collective Plaintiffs
And the Class,                                        DEFENDANTS, REPLY
                                                      MEMORANDUM OF LAW
                              Plaintiff,              IN SUPPORT OF MOTION
              -against-                               FOR SUMMARY JUDGMENT

E & D LLC d/b/a The Prime Grill, NY, JA
RESTAURANT MANAGEMENT, LLC d/b/a Solo,
BROADWAY 21 LLC d/b/a Prime Ko Japanese
Steakhouse and JOSEPH ALLAHAM.

                              Defendant.
-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted in further support of Defendants'

Motion for Summary Judgment Dismissing the Amended Complaint against each of the named

Defendants.  This claim continues to be a meritless attempt to shake down the defendants with

frivolous litigation.  Plaintiff repeats the same conclusory allegations as the Amended

Complaint and submits no support for any of his claims.  His attorneys continue to avoid any

diligent investigation of facts, ignore the facts and grasp at straws, nitpicking at the documents

and payroll records provided in discovery.  There is still no support for the allegations of the

complaint and no evidence or even a detailed allegation has been submitted to meet plaintiff's

burden of overcoming summary judgment.  Without reiterating what has already been set forth

in support of defendants' motion, defendants address each one of plaintiff's points herein.

### I.   PLAINTIFF NEVER WORKED OVERTIME

Plaintiff never worked overtime, i.e., he never worked over 40 hours in any week.  His

payroll records substantiate this fact and he makes no specific assertion to the contrary.  His

1

attorneys make excuses for his and their failure to realize that the designation "2 Overtime" on his paystub is the shift spread.  Obviously, since no pay stub indicated more than 40 hours and usually between 20-30 hours per week, it was a knowingly false allegation from the start.  Even though plaintiff, better than anyone, knows that he never worked over 40 hours, he and his attorneys perpetuate the lie in order to obtain class action or certification status.  Having learned of these facts months ago, first in correspondence from defendant's counsel with payroll records and then from further discovery, plaintiff and his attorneys continue to perpetuate the false allegation that plaintiff received neither shift-spread pay nor proper overtime.  He received only shift-spread pay ("2 Overtime") and he worked <u>no</u> hours over 40.   The payroll records are dispositive.

## II.  <u>THE ERRORS IN THE "4 OVERTIME" RATE ARE IMMATERIAL</u>

Defendant's payroll company (Paychex) somehow calculated the time-and-a-half of $7.25 to be $10.81 per hour rather than $10.875.  Defendants were so concerned about repeating the miscalculation used pre-*Manfredi,* where the payroll company multiplied 1.5 by the lower tip-credited rate, they neglected to take the tip credit at all after multiplying 1.5 by the minimum wage.  Plaintiff's arguments and claims are thus rendered ludicrous, when it is considered that the errors favor the employees in every instance.  The correct overtime rate for a tipped employee should have been $10.875, <u>less the tip credit of $2.25</u>, which equals $8.65 (as admitted in plaintiff's memorandum of law at page 9).  The rate indicated on the NY Labor Law notice acknowledged by Agudelo (Exhibit H to Defendants' moving papers) is correct.  It is fortunate for defendants that their employees work so little overtime that paying them an extra $2.16 per hours over 40 resulted in a de minimus error in the employee's favor. Since plaintiff never worked over 40 hours, neither a 7 cents error in the time-and-a-half calculation nor an error in

the employees favor is of any consequence and is legally not material to this motion for summary judgment.  Neither Agudelo (who never worked over 40 hours) nor the putative class, which may have benefited from this error should be heard to complain.

Regarding the putative class members, review of the year-to-date figures for overtime, demonstrate that the error was de minimus.  At all three restaurants for each defendant's payroll, Paychex designates hours worked over 40 per week as "4 Overtime" (*see* Exhibit C to Defendant's moving papers).

The more common ("Overtime 2") or shift spread pay was paid at $7.50 or $.25 more than the minimum wage requirement, which more than offsets the shortage in any event.  The rate of "2 Overtime" for shift pay is $7.50 per hour, although the New York Labor Law and Department of Labor Wage Order, effective January 2011, only requires the payment of an extra hour at straight time ($7.25) for shift spread pay.

### III.  <u>NO MANAGER SHARED IN TIP POOLS</u>

Having received copies of all weekly tip sheets with the names of all persons sharing in the tip pool, plaintiff is unable to identify any name to support his claim.   The Amended Complaint is devoid of any allegation supporting the claim that managers participated in the tip pool.  In opposition to summary judgment, plaintiff makes no assertion that any particular person on the tip sheets should not be participating.  As to plaintiff's counsel's attack upon the tip sheets themselves, annexed hereto as Exhibit A are daily tip records for Prime Grill and Solo together with the weekly tip sheet (there are no payroll records for Agudelo for Broadway 21, LLC d/b/a Prime Ko; it is undisputed that he never worked for that company.

The weekly and daily tip sheets for the Prime Grill show the names and positions of each employee in the tip pool.  The daily tip sheets at Prime Grill were kept past the payroll period

3

and are included with the weekly for the week ending July 22, 2011. At the Prime Grill tips were divided as follows: servers 7 points; runners 5 points; bussers 3 points. The information on the daily tip sheets are recorded on the weekly tip sheets for the payroll. *See* Exhibit A.

At Solo the daily register cash out record of sales and tips is kept for the servers on each shift. A daily tip sheet is also prepared by the server and that information is recorded on the weekly tip sheet. At Solo the daily tip sheet prepared by the server is not kept after the payroll period. The daily information remains recorded on the daily register cash out record. The tips paid the servers are recorded thereon and the bussers and runners receive a proportionate share based on the point system the service staff had agreed upon (servers 6 points; runners 4 points; bussers 2 points). The cash out records from Solo attached as Exhibit A show that on August 10, 2010, the total tips were $696.27 (lunch plus dinner). The two servers for lunch shift were "Juan T" and Alina B". The cash out totals corroborate the total tips for that lunch shift reported on the weekly tip sheet. According to the weekly tip sheet, each server received $104.35 for the same lunch shift. On August 10, 2010, Agudelo only worked the lunch shift. He received $59.59, which is his proportionate share as a Busser.

Agudelo would have been present during the preparation of the daily tip sheet on each day he worked. He was, therefore, fully aware of the information thereon and that he received the proper allocation of tips and that a record was kept. He was similarly fully aware of who participated in tips and that none of them were management. His allegations to the contrary are not only conclusory and unsupported; they are knowingly false.

### IV.    REQUIRED NOTICE OF THE TIP CREDIT WAS GIVEN

The Amended Complaint and Agudelo Declaration, at para. 11, is false regarding notice of tip credit. He received a notice as indicated by his signature on the Notice annexed as

4

Exhibit H.  Having been caught in this lie, his attorneys seek to feign a lack of comprehension of English, although nowhere in the opposition to summary judgment is there a sworn statement that Agudelo does not understand, speak or read the English language.  As demonstrated by the Declarations of managers he has worked under, such an assertion would be false. *See* Declarations annexed hereto as Exhibit B.  Each received specific written notice (Exhibit H) on or about February 8, 2011, in compliance with the New York Labor Law, Department of Labor wage order for the hospitality industry, effective January 2011 (notice required by March 1, 2011.

> NYCRR Section 146-22 (emphasis added)
>
> (a)     Prior to the start of employment, an employer shall give each employee written notice of the employer's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular pay day.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.  The employer must provide notice in (1) English and (2) any other language spoken by the employee as his/her primary language, so long as the Commissioner has made such a notice available on the Department's website.

If the required notice form is not available in another language on the DOL website, English is sufficient.  The forms in English/Spanish made available on the Department of Labor website (annexed hereto as Exhibit C) do not include language that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate."  These notices, are not sufficient for the hospitality industry and, consequently, there is no requirement to provide the notice in another language.  The notice used by defendants met all necessary requirements for the tip credit.

The absence of a "pay day" on the notice does not, as a matter of law, render it ineffective as to the tip credit.  All information concerning the tip credit is included on the notice annexed to Defendants' moving papers as Exhibit H.  Moreover, Agudelo spoke English

in the work place to both his managers and coworkers.  *See* Declarations annexed hereto as Exhibit B.

### V.       EACH EMPLOYER MAINTAINED SUFFICIENT TIP RECORDS

The employer has maintained all records required to demonstrate that, in each pay period, the amount of tips exceeded the tip credit and how the tip pool operated.     Having failed to demonstrate lack of notice of the tip credit, plaintiff's counsel resorts to fishing for technical deficiencies in the pay stub.

Each employee had written notice of the tip credit pursuant to NYCCR Section 146-2.2.  What is important is that the employer maintains records for each pay period of the tips collected and paid.   The cases cited by plaintiff for the proposition that failure to report the tip credit on the paystub results in loss of the tip credit were decided prior to the written notice requirement of NYLL Section 195.1(a) and NYCCR Section 146-2.2.   In Padilla v. Manlapaz, 643 F. Supp. 2d 302 (S.D.N.Y. 2009), the employer failed to keep required records of tips paid to employees.  The court noted that the employer both failed to keep tip records and failed to notify the employee of the tip credit on the pay stub.  Plaintiff cites no case authorizing the loss of the tip credit where a notice pursuant to NYCCR Section 146-2.2 has been provided and acknowledged.   The 2009 cases predated the written notice requirement and the cases cited are inapposite.   Unlike the employer in Padilla, defendants have maintained all necessary records for the tip credit.   In Padilla, failure to include the tip credit on the stub was not the violation that resulted in damages, it was an issue in the calculation of unpaid wages resulting from other violations. There is no case or example of an employer, particularly post 2011 notice requirements, losing an otherwise proper tip credit due to the pay stub.  Loss of the tip credit would be an unwarranted windfall to an employee who has been neither deceived nor

shortchanged in any way. Also, the employers in those cases did not lose the tip credit after having properly paid each employee, as would be the case if Defendant's herein were to lose the tip credit. The employer was found in violation of wages and hours laws and the tip credit was rejected as an element in the calculation of damages due to improper record keeping.

From a payroll company's perspective because the information on a pay stub traditionally reports money being paid to (credited) and withheld from (debited) to an employee. If the pay stub would have reported line items (1) regular rate $7.25 per hour, (2) tip credit -$2.25 per hour and (3) tips it would result in zero hours worked. According to Paychex, the problem is you can't multiply a [negative] -2.25 by the number of hours because the total hours for the pay period would net out to zero (*see* email from Paychex representative Claudia Ionescu annexed hereto as Exhibit D. Defendants are working with Paychex to figure out a way to reference the information without disturbing the actual wages, tips and hours being reported, however, there was no deficiency in the pay stub that warrants loss of the tip credit as a matter of law.

**VI. THERE IS NO SUBJECT MATTER JURISDICTION OVER STATE CLAIM**

In the Second Circuit, supplemental jurisdiction to hear state law claims must be "part of the same case or controversy" and "derive from a common nucleus of operative fact." *See* Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2nd Cir. 2006), *citing* 28 U.S.C. Section 1367.

There is no requirement that the tip credit be on the pay stub under the FLSA or federal law. The argument advanced by plaintiff that the employer should lose the tip credit, despite *having given* plaintiff due written notice, and despite the *employer maintaining necessary records* of the tip credit and tips, is a purely state law argument. It proposes an

overly strict and draconian application of regulations, some of which have arguably been superseded or their purpose rendered obsolete by later enactments such as the 2011 New York State Department of Labor Wage Order.

Although the tip credit itself is a "factual nucleus," it is not "operative" in relation to the pay stub claim.  The operation of these facts and the regulations are creatures of the state. In any event, the standard of Section 1367 (a) is not dispositive.  A district court may and, in the case at bar,  should decline to exercise supplemental jurisdiction over the state law claim because (1) "the pay stub claim raises a novel or complex issue of state law"; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction. *See* Jones v. Ford Motor Credit Co.*,* 358 F.3d 205, 214 (2nd Cir. 2004).

No state agency or court has held loss of the tip credit under circumstances in the case at bar, as already discussed, the federal case cited is inapposite.  In any event, federal court is neither the place to advance such an argument, nor should a federal judge be fashioning extreme remedies that state agencies have never imposed or advocated.  The New York State DOL and/or the New York courts are the appropriate forum. There are no FLSA violations herein.  The payroll and tip records dispose of all allegations that the FLSA was violated. Plaintiff has not sustained his burden to defeat summary judgment on any of his FSLA claims. This effectively leaves the Court with no subject matter jurisdiction to hear a claim regarding the paystub as a supplemental state claim.

Moreover, there are sufficient grounds demonstrated on this motion to dismiss all FLSA claims (overtime, shift spread and tip credit claims based on federal law).   Plaintiff has also failed to sustain his burden as to the remedy he seeks for the alleged

8

pay stub deficiency under state law due to a lack of clear, applicable authority for loss of the tip credit.

Where the district court has dismissed all claims over which it has original jurisdiction, the court should decline to exercise supplemental jurisdiction over a state law claim.  Id.

### VII.    THERE ARE NO "INCONSISTENCIES" IN PAYROLL RECORDS

It should also be noted that in discovery, plaintiff's counsel was told that there are no actual copies of paystubs.  They are provided only once to the employee with the pay check. The information on the paystub is recorded in computerized journals by Paychex and can be printed out in various forms, including in a "pay check and stub" format.  It is not, however, a hard copy of the actual pay check or the pay stub but merely contains the same information.

This can be seen by the fact that year to date (YTD) info on the recently printed Paychex "paystub" is as of the date of printing.  Any YTD totals are always current and once the year is finished, they will always reflect the year-end total even if a report or journal is requested for a one month.  For example, February 2011 totals will appear, as of February 2011, but YTD will reflect the entire year once the year is up.  Plaintiff's counsel makes an issue out if alleged "inconsistencies in YTD figures between the paystub retained by plaintiff and the "paystub" recently printed by Paychex.  What should have been (and probably was) obvious to plaintiff's counsel was the fact that all of the paystubs had the same YTD total, regardless of the pay period.  Incidentally, the Exhibits plaintiff asks the Court to compare are two different pay periods (Plaintiff's Exhibits "G" and "H").  When grasping at straws, it is inevitable that desperation will yield nonsensical arguments.

## VIII.   PLAINTIFF WORKED AT SERVICE OCCUPATIONS OVER 80% OF TIME

Plaintiff makes conclusory allegations about the occupations of a busser at defendants' respective restaurants.  Despite the fact that he was a busser at two restaurants, he is unable to specify what jobs he performed amounting to more than 2 hours, or more than 20% of his time. Each of the managers under which he worked, confirm that neither servers, bussers or runners work at non-service tasks 20% of their work day for more than 2 hours.  Plaintiff has utterly failed to meet the burden of overcoming summary judgment on this issue.

## IX.   PLAINTIFF FAILS TO MEET HIS BURDEN IN OPPOSITION

Although the court should view any inferences that may be drawn in a light most favorable to the non-moving party, Adickes v. D.H. Kress & Co., 398 U.S. 144 (1970), the payroll and time records, accompanied by a declaration explaining any anamolies, "sheds all the light that is needed to determine this case."  The records provided by defendants show the absence of a genuine issue of material fact for trial and shift the burden to the plaintiff.  S*ee* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Plaintiffs failed to "go beyond the pleadings and present affirmative evidence to show that genuine issues of material fact exist."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 257.

Plaintiff merely repeats conclusory statements in his complaint, as his attorneys search for minor discrepancies in the payroll records, which only serve to point out errors favoring employees.  Regarding the tip credit, plaintiff has utterly failed to support his allegations of managers sharing in tips. If the only question of fact is whether Agudelo speaks, reads and understands the English and in fact spoke to his managers and coworkers in English, then Plaintiff should be prepared to pay defendant's attorney's fees if he loses that issue.

Materiality is determined by the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, *supra,* 477 U.S at 248. A few anomalies, discrepancies or clerical errors in the payroll records must be material not merely de minimus mathematical or computational errors to shift the burden to the employer. *See* Etienne v. Inter-County Security Corp., 5 WH Cases2d 859 (11th Cir.), *vacating and substituting in part* 173 F.3d 1372 (11th Cir. 1999).

## CONCLUSION

Based on the foregoing, defendants respectfully request that the Amended Complaint be dismissed against each of them.

Respectfully Submitted,

Law Office of Thomas Rubertone, Jr.

*/s/ Thomas Rubertone, Jr.*
Thomas Rubertone, Jr.  (TR2193)
244 Waverly Road
Scarsdale, New York 10583
(646) 209-0301

11